JOSEPH W. ALSOP against ARTHUR MAGILL and STEPHEN CLAY.

A sum of money being awarded, by the commissioners under the British treaty, to A. for a vessel and cargo, belonging to him, which had been captured and condemned as prize, and for the expenses of B. his agent, in endeavouring to prevent a condemnation; A. for a valuable consideration, assigned his right in the award to C.; B. in an action for money had and received against C. claimed that C. was liable to refund the sum allowed in the award for B.'s expenses, and offered A. as a witness to prove the whole case: Held, that A. was inadmissible, as a recovery by B. against C. would discharge A.'s liability to B. for his expenses; and that, if the case were otherwise proved, still B. could not recover against C. who was a bona fide purchaser, and entitled ex æquo et bono to retain the money.

Where justice has been done, the court will not grant a new trial for a misdirection to the jury.

MOTION for a new trial.

This was an action of indebitatus assumpsit for money had and received to the plaintiff's use.

The defendants pleaded the general issue; and, at the trial, the following facts appeared: The brig Hiram, laden with a valuable cargo, and owned in equal parts by Isaac Riley, Lemuel Storrs and Joseph W. Alsop, (whereof John Stocking was master, and said Alsop supercargo,) was, in the year 1794, seized by a British ship, carried into Bermuda, and condemned as prize. In the year 1800, before any award had been made by

the commissioners under the *British* treaty, *Riley* assigned his property in the brig and cargo to *Storrs*, and *Storrs* afterwards assigned the same, with his original one third, for the consideration of 10,000 dollars, to *Magill & Clay*, the defendants. In the deed of assignment, *Storrs* made over all his right to the brig and cargo, and to the moneys that might be recovered in compensation or payment from the captors and the *British* government. He likewise empowered *Magill & Clay* to receive "two third parts of the moneys that might be recovered, for or on account of the seizure and condemnation of said brig and cargo." Posterior to this, the commissioners under the treaty made their award for the amount of the brig and cargo, and for the board and expenses of *Alsop*, being 257 dollars and 16 cents, while he was at *Bermuda*, endeavouring to prevent the condemnation of the brig and cargo, two thirds thereof to be paid to *Magill & Clay*, and one third to *Alsop*. The money was received in pursuance of the award.

It appeared, that *Alsop* had presented his claim for board and expenses in *Bermuda*, to the commissioners, and that they had disallowed it, as his *personal* claim. Of this, however, *Magill & Clay* had no notice.

This action was brought to recover 171 dollars and 44 cents, being two thirds of the whole sum allowed as above, as having been received by the defendants to the plaintiff's use.

*Storrs* was offered as a witness, by the plaintiff, to prove the whole case. He was objected to, as being interested in the event of the suit; and the court excluded him.

In the charge to the jury, the court instructed them, that the plaintiff, while prosecuting the claim of the owners in *Bermuda*, must be considered as their agent, and that he had a right to claim the moneys disbursed for his board and expenses of *them*, and not of the de-

fendants, who were *bonâ fide* purchasers and assignees of the allowance, which should be made to *Riley* and *Storrs* for two thirds of the vessel and cargo, and expenses, at a risk, and without any notice of this claim of the plaintiff: And that the verdict ought to be in favour of the defendants, unless the jury should find, that the sum claimed had been particularly awarded to the plaintiff by the commissioners, and received by the defendants.

The jury found a verdict for the defendants; and the plaintiff moved for a new trial, which motion was reserved for the consideration of the nine judges.

*Ingersoll* and *Dwight*, in support of the motion.

*Daggett* and *Hosmer*, contra.

BY THE COURT. Two questions arise in this case: First, whether *Storrs* was interested in the event of the suit; secondly, whether the charge of the court to the jury was correct in point of law.

*Alsop*, while at *Bermuda*, acted as agent for the owners, of whom *Storrs* was one. His claim for services and expenses there was against them, and not against the *British* government. The demand of the owners against the *British* government was not merely for vessel and cargo, but for all the expenses by them incurred in their defence at *Bermuda*, and in the prosecution of their claim for remuneration; of which expenses, this bill of their agent constituted a part, as much as the fees of their proctor in *Bermuda*. And accordingly, the *British* government, in the result, awarded to the owners, as belonging to them, the amount of the plaintiff's present demand.

*Storrs* had assigned to the defendants, not merely the right to his one third, and *Riley's* one third, of such allowance as should be made for vessel and cargo, but

to all moneys that might be recovered as compensation from the *British* government for the capture and condemnation. The effect, therefore, of *Storrs's* testimony, if any, would be to discharge his own liability, and fix it on the defendants.

As *Storrs* was entitled to two thirds of *Alsop's* bill in his claim against the *British* government, and as he had sold to *Magill & Clay* all that he was entitled to, it follows that they can fairly and honestly retain it; and *Alsop* can have no claim against them for it.

Whether the charge of the court was perfectly correct in point of law, it is unnecessary to determine. Justice is done; and a new trial ought not to be granted.

New trial not to be granted.